﻿Citation Nr: 19172615
Decision Date: 09/18/19 Archive Date: 09/18/19

DOCKET NO. 19-21 250
DATE: September 18, 2019

ORDER

Service connection for a back disorder is denied.

Service connection for right upper extremity paresthesias, to include as a residual of a cold weather injury is denied.

Service connection for right lower extremity paresthesias, to include as a residual of a cold weather injury is denied.

Service connection for left upper extremity paresthesias, to include as a residual of a cold weather injury is denied.

Service connection for left lower extremity paresthesias, to include as a residual of a cold weather injury is denied.

REMANDED

Entitlement to a compensable initial rating for bilateral sensorineural hearing loss.

FINDINGS OF FACT

1. A current back disorder was not shown in service and is not causally or etiologically related to service.

2. Right upper extremity paresthesias was not shown in service and is not causally or etiologically related to service. 

3. Right lower extremity paresthesias was not shown in service and is not causally or etiologically related to service. 

4. Left upper extremity paresthesias was not shown in service and is not causally or etiologically related to service. 

5. Left lower extremity paresthesias was not shown in service and is not causally or etiologically related to service. 

CONCLUSIONS OF LAW

1. A back disorder was not incurred in service. 38 U.S.C. § §§ 1131, 5103, 5103A, 5107; 38 C.F.R. § § 3.303.

2. Right upper extremity paresthesias, to include as a residual of a cold weather injury, were not incurred in service. 38 U.S.C. § §§ 1131, 5103, 5103A, 5107; 38 C.F.R. § § 3.303.

3. Right lower extremity paresthesias, to include as a residual of a cold weather injury, were not incurred in service. 38 U.S.C. § §§ 1131, 5103, 5103A, 5107; 38 C.F.R. § § 3.303.

4. Left upper extremity paresthesias, to include as a residual of a cold weather injury, were not incurred in service. 38 U.S.C. § §§ 1131, 5103, 5103A, 5107; 38 C.F.R. § § 3.303.

5. Left lower extremity paresthesias, to include as a residual of a cold weather injury, were not incurred in service. 38 U.S.C. § §§ 1131, 5103, 5103A, 5107; 38 C.F.R. § § 3.303.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active service in the U.S. Army from July 1956 to July 1958.

These matters come before the Board of Veterans’ Appeals (Board) on appeal from a September 2017 rating decision. 

Service Connection

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by service. Establishing service connection generally requires competent evidence of three things: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship, i.e., a nexus, between the claimed in-service disease or injury and the current disability. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009); 38 C.F.R. § § 3.303(a).

The Veteran’s service records were lost in a 1973 fire at the National Personnel Records Center and are not available for review. Where service records are unavailable, there is a heightened obligation to explain findings and conclusions and to consider carefully the benefit-of-the-doubt rule. O’Hare v. Derwinski, 1 Vet. App. 365, 367 (1991); Pruitt v. Derwinski, 2 Vet. App. 83, 85 (1992). The case law does not, however, lower the legal standard for proving a claim for service connection but rather increases the Board’s obligation to evaluate and discuss in its decision all of the evidence that may be favorable to the appellant. See Russo v. Brown, 9 Vet. App. 46 (1996). Moreover, there is no presumption, either in favor of the claimant or against VA, arising from missing records. See Cromer v. Nicholson, 19 Vet. App. 215, 217-18 (2005) (declining to apply an “adverse presumption” where records have been lost or destroyed while in Government control which would have required VA to disprove a claimant’s allegation of injury or disease in service in these particular cases).

The Veteran contends that he has a back disorder as well as upper and lower extremity paresthesias as a result of his military service. Specifically, he asserts that when he served in Korea, he endured very extreme cold temperatures and that his back disorder is due to his duties in the Infantry. 

As noted above, no service records are available to corroborate the Veteran’s account. Therefore, there is a heightened obligation to explain findings and conclusions and to consider carefully the benefit-of-the-doubt rule.

Nevertheless, the only evidence in favor to the Veteran’s claim is his lay statements. However, he has not demonstrated any specialized knowledge or expertise to indicate he is capable of rendering a competent medical opinion. Although lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), as to the specific issue in this case, the etiology of a back disorder and bilateral upper and lower extremity paresthesias, falls outside the realm of common knowledge of a lay person. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007) (lay persons not competent to diagnose cancer). 

On the contrary, August 2012 VA medical records confirm the Veteran sustained a spinal cord injury as a result of a suicide attempt, when he threw himself from his home’s roof, resulting in in incomplete paraplegia and neurogenic bladder and bowel disorders. MRI of his spine indicates he experienced compression and vertebral and facet fractures in the lumbosacral region, L4-L5. There was also marrow edema involving the upper half of the L2 vertebral body compatible with a bone contusion. 

VA treatment described multiple stressors from both his financial situation and his home life. The Veteran had lost three properties in the previous year and had been his wife’s primary caregiver since she experienced a debilitating stroke four years prior. 

Since then, he has sought follow up treatment for his back disorder. March 2014 VA records indicate he sought treatment for numbness in his right lower extremity that causes it to give way. An October 2015 X-ray confirmed compression fracture of L4 vertebral body with progressive decreased height, degenerative joint disease, disc disease and osteopenia. March 2016 VA records reflect an additional diagnosis of spondylosis. August 2017 VA records indicate a diagnosis of cauda equina syndrome, which was noted as temporary with resolution of neurogenic bladder and bowel disorder.

Prior to his suicide attempt, there is no indication that the Veteran had a back disorder or bilateral upper and lower paresthesias. In November 2006, he complained of bilateral knee pain for the past four years. In July 2007 VA records, his doctor requested that he undergo a bone density test, to see if he had osteoporosis. The Veteran was asked if he ever had back pain severe enough to require strict bed rest at home or an admission to a hospital for traction and physical therapy; he responded negatively. The result of the bone density scan indicated he had osteopenia, a disorder where his bones were weaker than normal, but not so far gone that they could easily break. His doctor recommended a calcium with Vitamin D supplement. 

Ultimately, there is no competent evidence of a back disorder or upper and lower paresthesias that was etiologically related to service only. Rather, the disorders are linked only to the August 2012 suicide attempt or other possible etiologies.

The Board acknowledges that the Veteran was not afforded a VA examination and no medical opinion was provided in response to these claims. However, a VA examination is not warranted in this case. 

VA’s duty to assist claimants may also include providing a medical examination. These are required when there is (1) competent evidence of a current disability or persistent or recurrent symptoms of a disability, (2) evidence establishing that an event, injury, or disease occurred in service or establishing certain diseases manifesting during an applicable presumptive period for which the claimant qualifies, (3) an indication that the disability or persistent or recurrent symptoms of a disability may be associated with the claimant’s service or with another service-connected disability, and (4) insufficient competent medical evidence on file for VA to make a decision on the claim. McLendon v. Nicholson, 20 Vet. App. 79 (2006). However, as the record contains no evidence indicating that the Veteran’s back disorder and upper and lower extremity paresthesias are related to service other than his lay testimony, which is not competent to establish such a link in light of the overwhelming medical evidence against his assertion, element (3) is not met. 

The evidence currently of record is sufficient to decide the claim. The Board finds no basis upon which to grant service connection for these disorders.

In reaching the above conclusions, the Board considered the applicability of the benefit-of-the-doubt doctrine. In this case, the preponderance of the evidence is against finding that the Veteran’s back disorder and bilateral upper and lower extremity paresthesias are etiologically related to his active service. The doctrine is not applicable to the instant appeal because the evidence is not in a position of equipoise, equal positive and negative evidence, to otherwise grant the Veteran’s claim. The appeal is denied. See 38 U.S.C. § § 5107(b); 38 C.F.R. § § 3.102.

REASONS FOR REMAND

The Veteran contends that his hearing has worsened since the last VA examination conducted in August 2017. Specifically, in the July 2019 substantive appeal, he reports that he underwent a recent evaluation, which was not considered in the RO’s decision. He asserts that the more recent evaluation resulted in a prescription for hearing aids, which is evidence that supports his claim of further deterioration. 

A closer review of the claims file suggests that there are outstanding VA medical records. In fact, the last time VA medical records were obtained on the Veteran’s behalf was in September 2017. Without such records, the Board is unable to adequately assess the current state of the Veteran’s bilateral sensorineural hearing loss.

Moreover, generally, when a claimant asserts that a disability has increased in severity since the last examination, another VA examination will be scheduled. VAOPGCPREC 11-95 (April 7, 1995); see also Snuffer v. Gober, 10 Vet. App. 400 (1997); Caffrey v. Brown, 6 Vet. App. 377 (1994).

The matters are REMANDED for the following action:

1. Obtain any outstanding VA treatment records, from September 2017 to date, and associate them with the Veteran’s claims file. These attempts should be documented, and if no records are available, a formal finding of such should be associated with the Veteran’s claims folder.

2. Schedule the Veteran for an examination to determine the current severity of his service-connected bilateral hearing loss. The claims folder must be made available to the examiner. All pertinent symptomatology and findings must be reported in detail.

3. Then, readjudicate the issue on appeal. If the benefit sought is not granted to the Veteran’s satisfaction, a supplemental statement of the case should be issued to the Veteran, and they should be afforded the requisite opportunity to respond. Thereafter, the case should be returned to the Board for further appellate action.

 

K. M. SCHAEFER

Acting Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board N. Pendleton, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § § 20.1303.